# SUPREME COURT.

## ANDERSON AND OTHERS agt. THE ROCHESTER, LOCKPORT, AND NIAGARA FALLS RAILROAD COMPANY.

It is a point incontrovertibly settled by authority of the courts and the universal practice of the construction of such roads, that a *railroad* running through a city is not *per se* a *nuisance.*

Although, frequently, railroads may be productive of great inconvenience and annoyance to individuals, yet they constitute one of the prominent improvements of the present progressive age, and are matters of public necessity.

Where the plaintiffs complained that the construction of the track of the defendants' railroad, and the running of cars thereon, &c., through a public square in the city of Rochester, within sixty-five or seventy feet (including a street)

Anderson and others agt. The Rochester, Lockport, and Niagara Falls R. R. Co

of the front of plaintiffs' dwellings, would be productive of annoyance so great as to amount to a nuisance—*held*, that it was equivalent to saying that the railroad through the city was a nuisance *per se*. Because, it is impossible to construct such a road through a city or populous village without, in very many instances, bringing the line of the track within that distance of the dwellings of the inhabitants.

Where it was alleged that part of a *public square* in the city of Rochester had, some thirty years since, been dedicated by the original proprietors to the city for such use, and the remaining part, or enlargement, had been acquired by the city, for the same purpose, by purchase; and the plaintiffs claimed as proprietors of lots fronting on the square, holding the title thereto by purchase from the original proprietors, also; and averring that a large share of the expense attending the enlargement of the square was assessed upon the lots fronting thereon, on the ground that they were to be benefited by such enlargement, and that thereby they had acquired a legal or equitable *interest* in the lands constituting the square, which entitled them to personal compensation before any portion of it could be taken for a public use, (a railroad;) and alleged that they should be made parties to the proceedings under the railroad act to acquire the title.

*Held*, that by the dedication of the land for·the square, the naked fee remained in the original proprietors, and the public acquired an *easement* merely, which vested in the corporation of the city, which became the *trustee of a use.*

The plaintiffs had no *private easement* in the square, *separate and distinct* from that held by the corporation in trust for *all* the citizens.

Although the corporation held the lands *purchased* and added to the square by a tenure different from that of the other portion, because it had the *fee* and not a mere easement, but still holding the whole *in trust* for the public use, yet no part of the title was vested in the owners of lots fronting upon it. The plaintiffs' rights differed only in *degree*, and not in kind from those of other citizens owning lands not adjoining the square, which might have been assessed in common with them.

A railroad company, by proceeding under section 14, and the subsequent sections of the general railroad act to acquire title to land, obtain no greater right or title than the parties against whom they proceed possessed.

In this case, therefore, the defendants, having proceeded under the above-mentioned sections of the act, acquired no right to use this square for any purpose inconsistent with the object of its dedication. They should have proceeded under section 26 of the railroad act, which provides for cases of lands held in trust.

But the plaintiffs being beneficiaries of the trust in this case, in common with the whole public, could not, nor could any of the citizens, as *cestuis que trust*, proceed in their own names against *a stranger* to the trust, except where the acts of such stranger were productive of some special injury to the parties complaining, not common to all the *cestuis que trust.*

*Held*, therefore, that the plaintiffs were not entitled to the relief they asked, unless it appeared that the construction of the defendants' road, as proposed,

Anderson and others agt. The Rochester, Lockport, and Niagara Falls R. R. Co.

would so seriously impair the plaintiffs' enjoyment of their use in the square as to amount to a *special nuisance* to them individually, and not otherwise.

The defendants in this case having executed a covenant to the city of Rochester not to erect any buildings upon the square, nor to suffer any trains of cars to stand or remain thereon, *held,* that the inconveniences affecting the rights of the plaintiffs, by running the defendants' road on the side of the square—such as the obstruction of light, air, prospect, and of a public promenade, &c.—could not be considered such annoyance as to amount to a *private nuisance:* consequently the defendants should not be restrained, on the complaint, from proceeding with the erection of their road.

*Monroe General Term,* 1854.

JOHNSON, T. R. STRONG, and SELDEN, Justices.

This is an appeal from an order made by one of the justices of this court, at chambers, restraining the defendants from constructing the track of their railway across an open space in the city of Rochester, called Brown's square.

The complaint states that the square was laid out and dedicated to the public use as an open square, by the proprietors of the tract of which it is a part, more than thirty years ago ; that at the time of such dedication the proprietors laid out the surrounding and adjoining lands into village or city lots, and that one onject of the said proprietors in so laying out and dedicating the said square was to increase the value and facilitate the sale of the said lots ; that in the year 1840 the common council of the city of Rochester purchased a quantity of ground adjoining the northern end of the square, and added the same thereto ; that this addition to the square was made at an expense of several thousand dollars ; that McGlachlin & Goss, two of the plaintiffs, are respectively owners of lots fronting upon the square as originally laid out, and the plaintiff Anderson of a lot fronting on the new portion thereof ; that a large share of the expense attending the enlargement of the square was assessed upon the lots fronting thereon, on the ground that they were to be benefited by such enlargement ; and that the plaintiffs claim, by means of these premises, to have acquired a legal or equitable *interest in* the lands constituting the said square.

The complaint further states, that the defendants have instituted proceedings under the general railroad act for the purpose

of acquiring a right to lay their track across the said square, to which proceedings the city of Rochester and the original proprietors of the land constituting the square alone were made parties: that the land which the defendants desire to appropriate for the purposes of their road consists of a strip of fifty feet in width across the west side of said square : that the plaintiffs' lots are separated from the square by Kent-street, which runs along the west side thereof, and is sixty feet in width—thus bringing the front of said lots within sixty feet of the strip of land taken for the road : that under the proceedings thus instituted commissioners of appraisal had been appointed, who had appraised the damages and made their report, by which they had awarded to the city of Rochester two thousand nine hundred dollars, and to the original proprietors one hundred dollars; and that the defendants are about to apply to the court for the confirmation of the report, and avow their intention immediately to enter upon and take possession of the premises for the purpose of constructing their railroad track across it.

· It then alleges that the laying of the track of the road across the said square will greatly diminish the value of the plaintiffs' lots, and render the enjoyment of them uncomfortable : that the running of cars on the said track will expose their dwellings to destruction by fire, and produce great annoyance by noise, by smoke from the engines, and by frightening horses· which may be hitched in front of their houses : and that the defendants have not made to the plaintiffs, or either of them, any compensation for the damages which they will thus sustain; and demands judgment that the defendants make compensation for such damages, and for the plaintiffs' interest in the land·to be taken before they enter thereon for the purpose of constructing their road, and that in the mean time they be restrained from taking possession of the same.

Upon the hearing at chambers, which was upon notice to the defendants, affidavits were produced and read on the part of the defendants, showing that the city of Rochester had acquired the title to that portion of the square which had been added thereto, as stated in the complaint, under the provisions of the

city charter obtained in 1834 : that upon the hearing before the commissioners of appraisal, the city of Rochester appeared and claimed the whole of the compensation to be awarded for taking the said strip of land ; and the original proprietors of the soil also appeared and claimed compensation for the same : that the appraisal and report of the commissioners awarding two thousand nine hundred dollars to the city, and one hundred dollars to the original proprietors, had been confirmed, and the sums so awarded paid by the defendants : that before the commissioners proceeded to make said appraisal, the defendants executed a covenant to the city of Rochester, by which they agreed, in substance, that the strip of land to be taken should only be used for the passage of cars across the same, and that no buildings should be erected thereon, nor any cars suffered to stand upon the track or any part of the square ; and containing further provisions for the preservation of the trees and for making an ornamental fence along the railroad track.

> ORLANDO HASTINGS, *for plaintiffs.*
> SELAH MATHEWS, *for defendants.*

By the court—SELDEN, Justice. From the statements in the complaint it is evident that the plaintiffs claim the interference of this court upon two grounds, entirely distinct and independent of each other. One is, that the construction of the track of the defendants' road, and the running of trains of cars so near the plaintiffs' dwellings, will be productive of annoyances so great as to amount to a nuisance, which the court is bound to prevent ; and the other, that the plaintiffs have a legal interest in the strip of land appropriated for the road, which the defendants are about to take from them by the construction of their railroad without having made any compensation therefor ; contrary to the provisions of the constitution. These two grounds are somewhat blended in the complaint, but they are distinct in their nature and must be separately considered.

In regard to the first, it is to be observed that the plaintiffs' lots are upon one side of Kent-street, and the strip of land upon which the railroad is to be constructed is upon the other. This

street is sixty feet in width, so that the distance between the cars, as they pass, and the plaintiffs' dwellings cannot be less than sixty-five or seventy feet.

It is obvious that it is impossible to construct railways through cities and populous villages without, in very many instances, bringing the line of their track within this distance, or even much less, of the dwellings of the inhabitants. There is nothing in any of the annoyances specified in this case which differs in the slightest degree from those which would naturally occur in every instance in the construction of a railway within the same proximity to a dwelling. It follows, therefore, that if the defendants' railway is such a nuisance as entitles the plaintiffs to an order prohibiting its construction or use, then every railway about to be constructed through a city or village so as to approach within sixty or seventy feet of a dwelling, is to be so regarded, and its construction is liable to be restrained.

This is of course equivalent to saying that a railroad through a city is, *per se*, a nuisance, and should be prohibited. Can such a position be sustained? Railroads have repeatedly been constructed, and are daily being constructed through the cities and villages of this and other countries; but no court has yet been found to declare them to be either public or private nuisances. They are no doubt productive of great inconvenience and annoyance to individuals; but they constitute one of the prominent improvements of the present progressive age, and are matters of public necessity. The question whether a railroad is, *per se*, a nuisance has been presented to, and decided in the negative by the judicial tribunals of this and other states. (Hamilton agt. The New York and Harlem Railroad Company, 9 *Paige*, 171; Lexington and Ohio Railroad Company agt. Applegate, 8 *Dana*, 289.)

But the late case of Drake agt. The Hudson River Railroad Company (7 *Bar. S. C. R.* 508) bears with the greatest force upon the point we are considering. There the track of the road was to be laid along the middle of a street ninety feet in width, upon which the dwellings and stores of the plaintiffs were situated. The plaintiffs in that case, therefore, must ne-

cessarily have been subjected not only to all the annoyances specified by the plaintiffs here, but many others equally troublesome. If the track of the defendants' road in that case, laid down through the centre of one of the principal thoroughfares of the city of New-York, was not to be treated as a nuisance, how is it possible that this road, which leaves an entire street unobstructed between it and the plaintiffs' tenements, should be regarded as such?

I consider this point as incontrovertibly settled by this and the two previous cases to which I have referred, and the universal practice of constructing such roads.

This brings me to the consideration of the question, whether the plaintiffs have such an interest in the land constituting this public square as entitles them to personal compensation before any portion of it can be taken for a public use, and requires that they should be made parties to the proceedings under the railroad act to acquire the title.

The dedication of this square to the use of the public was in the customary mode, by the act of the proprietors in laying out the tract into city or village lots, with streets, avenues, &c., leaving this square as an open space; and by the corresponding acts of the corporation and the public in recognizing the space as a public square, and using it as such.

The principal effects of such a dedication are plain and obvious. The naked fee of the land remains in the original proprietors, and the public acquire an easement merely, co-extensive with the purposes to which such open squares in populous towns are usually appropriated; and where there is a corporation to represent the public, and take charge of its interests, the easement vests in such corporation, which thus becomes the *trustee of a use.* In this all the authorities concur; for, although it is said by the CHANCELLOR in the case of The Trustees of Watertown agt. Cowen, (4 *Paige*, 510,) that the supreme court of the United States had held, in City of Cincinnati agt. Lessees of White, (6 *Peters*, 431,) that the *legal title to the land* thus dedicated vests in the corporation: yet a careful examination of the latter case will show that no such doctrine is ad-

vanced in it. On the contrary, the case of Lade agt. Shepherd (2 *Stra.* 1,004) is cited and relied upon, which expressly holds that in cases of dedications to a public use, the fee of the land remains in the original proprietor; and that case is said to prove, " that it is not necessary that the fee of the land should pass in order to secure the easement to the public." This is the established doctrine in relation to lands dedicated to public use as highways and streets. Trustees of Pres. Soc. in Waterloo agt. The Auburn and Rochester Railroad Company, (3 *Hill,* 567;) Wyman agt. Mayor, &c., of New-York, (11 *Wend.* 486,) and the effect of a dedication for the purpose of a public square or common is in all respects the same. In City of Cincinnati agt. Lessees of White *supra,* the court say, " The right of the public to the use of the common in Cincinnati must rest on the same principles as the right to the use of the streets;" and in Trustees of Watertown agt. Cowen, the CHANCELLOR, after stating the doctrine of the courts in relation to lands dedicated for streets and avenues, says, " And this principle is equally applicable to the case of a similar dedication of lands in a city or village to be used as an open square or public work."

After the dedication of the square in question, therefore, the naked fee of the land composing it remained in the original proprietors, while the easement vested in the corporation of the village or city, which, for aught that appears in the case, existed at that time.

Had the proprietors of lots fronting on the square, holding the title thereto by purchase from the original proprietors, also, as the complaint assumes, an easement in the square *separate and distinct* from that held by the corporation in trust for all the citizens?

Such an easement, if it exist at all, must have had a definite legal origin. It is an interest held by one person in the lands of another, and must of course have been in some way conveyed. There is but one position, as I conceive, which can with any plausibility be taken in respect to the origin of the easement claimed. It is this: that the same act on the part of the original proprietors which the law construes to be a dedication of

the square to the public use, creates and annexes as an appurtenance to the adjoining lots an easement or right to have the ground composing the square kept perpetually open: and that the purchasers of those lots are presumed to have paid a consideration for the value thus added thereto.

But there are serious objections to taking this view of the subject. In the first place, notwithstanding the numerous cases in which the effect of such dedications has been considered, not an intimation has been given of the existence of any such private easement as distinct from the public right, unless a single expression of the CHANCELLOR in the case of Trustees of Watertown agt. Cowen should be so construed. There was in that case a special covenant by the grantor that the square should be kept open: but the CHANCELLOR says, "If the owner of the public square had already dedicated it to the public, *no special covenant was necessary* to authorize his grantees to insist that it should be kept open for their benefit or their assigns."

I do not, however, understand this as asserting the doctrine contended for here, but as simply affirming the principle of the case of Corning *et al.* agt. Lowere, (6 *John Ch.* 439,) in which it was held that the owners of tenements on a public street were entitled to an injunction to prevent the obstruction of such street by building a house upon it, on the ground that the proposed erection would amount to a *private nuisance.*

But another objection to the position of the plaintiffs, that the dedication of the square created a private easement which became appurtenant to the adjoining lots is this: that it establishes a double right to the same easement. It is conceded that the corporation are invested by the dedication with the right, and are charged with the duty of keeping the square perpetually open for the use and benefit of *all* the citizens, including of course the owners of lots fronting thereon. This right is an easement which is vested in the corporation as trustees. How, then, can a portion of the same easement be vested in the plaintiffs? It is clear, I think, that such an overlapping of rights cannot exist.

But the case of Drake agt. The Hudson River Railroad Com-

pany, (7 *Bar. S. C. R.* 508,) before cited, is a direct authority upon this question. It has already been shown that the effect of a dedication of land in a city or village for a public square is the same as that for streets and avenues, &c.; and in the case last cited it is expressly held, that the owners of lots fronting directly upon a street so dedicated acquire no greater rights than other citizens. JONES, the presiding justice, after stating the plaintiffs' right to the full and free use of the street on which their tenements front, for access to their dwellings, and for the convenience and accommodation of their residences and business pursuits, says, "But they can claim no greater right or interest in the streets than such full use and benefit of them as public streets. *All other citizens have an equal right with them to such use thereof as public streets.*"

And again he says, "But we cannot agree that the plaintiffs, or those from whom they derive their title, acquired or possess any special right to, or interest in the said streets, or the lands forming the same."

This is directly to the point, and ought, perhaps, in the absence of authority to the contrary, to be considered as decisive. I am unable to discover any substantial difference in this respect, so far as the rights and interests of the plaintiffs are concerned. The city of Rochester is authorized by its charter to acquire the title to these lands for *public* uses. It holds the lands purchased and added to the square by a tenure different from that of the other portion, because it has the fee and not a mere easement; but still it holds the whole *in trust* for the public use; and no part of the title is vested in the owners of lots fronting upon it. The plaintiffs were heavily taxed to pay for the land purchased; but they do not aver that they and those similarly situated paid the whole purchase money, nor is this to be inferred. Their rights differ only in degree, and not in kind, from those of other citizens owning lands not adjoining the square, which may have been assessed in common with those of the plaintiffs. The dedication in this case is by the city itself, the corporation retaining both the fee and the easement for the benefit of the public.

But these conclusions are not entirely decisive of the case. It is important to inquire what rights have been acquired by the defendants by the proceedings to obtain the right-of-way for their road across the square in question.

It will be conceded, I think, that the corporation, or it and the original proprietors combined, had no power to sell this square to be converted to purposes other than those for which it was dedicated. The title of the corporation was a trust merely to be exercised for the benefit of the citizens. Could the defendants, by proceeding under section 14, and the subsequent sections of the general railroad act, obtain any greater right or title than the parties against whom they proceeded possessed? If, not, then the defendants here have acquired no right to use this square for any purpose inconsistent with the object of its dedication.

The railroad act itself shows that this was the view taken by the legislature of the effect of proceedings under it. Section 13 provides, that in case any company is unable to. *agree for the purchase* of any real estate required by them, they may then proceed under the subsequent sections to acquire the title, that is, as would seem naturally to follow, such title as might have been obtained by purchase if the parties could have agreed.

But section 26 leaves no doubt that such is the meaning of the act. That section provides expressly for cases where the title to the land required is vested in persons who have no power to sell; and among others for the case, of lands held in trust. If we are right, then, in supposing that the title of the corporation is a trust merely, and that such trust is limited to the purposes for which the land was dedicated, it is clear that the proceedings to acquire this land should have been had under the provisions of section 26.

It does not follow from this, however, that this action can be maintained. The plaintiffs are beneficiaries in common with the whole public of the use to which this land has been devoted, having, as we have shown, no interest in the land itself.

In trusts of this public nature, if the trustee, as in this case

the city of Rochester, violates its duty by authorizing an encroachment upon the rights of the public, any of the citizens, as *cestuis que trust*, may institute a suit *against such trustee* to enforce the trust. But none of the beneficiaries of the trust can proceed in their own names against *a stranger* to the trust, except where the acts of such stranger are productive of some special injury to the parties complaining, not common to all the *cestuis que trust*. Lawrence agt. The Mayor, &c., of New-York (2 *Barb. S. C. R.* 577) is a case of the former kind; and Corning agt. Lowere (6 *John. Ch. R.* 439) of the latter.

This suit can be maintained, therefore, and the plaintiffs are entitled to the relief they ask, if it appears that the construction of defendants' road, as proposed, will so seriously impair the plaintiffs' enjoyment of their use in this square as to amount to a special nuisance to them individually, and not otherwise. It is true, the plaintiffs have not put their case upon this ground; but the essential facts to present the point are before the court.

This is not identical with the question first discussed.

The inquiry there was, whether the railroad, on account of its proximity merely to the plaintiffs' dwellings, and irrespective of any direct interest they may have in the land constituting the square, would be such a nuisance as this court is bound to restrain. Here it is, whether it is such, by reason of its interference with the special enjoyment by the plaintiffs of the benefits of the square.

We are to consider this point irrespective of the fact that the proceedings of the defendants, under the railroad act, gave them no title to the easement, because it belongs to the corporation alone to protect that title. These plaintiffs can have relief only upon the ground of interference with their personal enjoyment of the square.

What, then, are the benefits afforded by this square with the enjoyment of which this road will interfere? They, of course, are those of light, air, prospect and of a public promenade. This, I think, embraces all.

Now, it is not every encroachment upon the enjoyment of a

right of this description which will justify this court in the exercise of its restraining power. Although it may be so great as materially to diminish the value of the plaintiffs' property, it does not follow that this court will interfere on the ground of nuisance. (Fishmongers' Co. agt. East India Co., 1 *Dickens R.* 164; Attorney General agt. Nichol, 16 *Vesey*, 338.)

In this last case the bill was filed to prevent the erection of an equestrian statue of George III. upon an open triangular space in front of the plaintiff's premises in the city of London, at a point where several streets converged. The plaintiff claimed that there was an implied covenant by the commissioners of Woods and Forests, of whom he purchased, to keep the space open. This point, however, was ruled against him; but he also claimed that the statue would be a nuisance; and upon this subject the Lord CHANCELLOR says:

" It is said the statue will be a public nuisance. This it can only be by obstructing the carriage-way; but I am clearly of opinion that the erection of the statue will, upon the whole, be a great benefit to the public; by which I mean the public as contradistinguished from the occupiers of the adjoining houses. It is quite immaterial in my view of this case, whether a majority of the inhabitants of the neighboring houses do or do not object to the erection of the statue, and I give no opinion as to whether it is likely to depreciate the value of the property of the plaintiffs or to interfere with their enjoyment of it; of that they are the best judges: but I am very clearly of opinion that the injury and inconvenience, if any, do not constitute such a description of *private* nuisance as would justify the interference of this court upon that ground."

Now, this is in principle a parallel case to the present; because, although the plaintiff failed to establish an agreement on the part of the commissioners of Woods and Forests to keep the triangular space open, yet the evidence of dedication to the use of the public was as unequivocal in that case as in this.

The case, therefore, is important as showing: 1. That the injury and inconvenience complained of in such a case may be considerable, and even so great as " to depreciate the value of

the property of the plaintiffs, or to interfere with their enjoyment of it," and yet not constitute such a *private nuisance* as would justify the interference of the court; and, 2. That where the public have an interest in the work objected to, this is to be taken into consideration, and individuals are required to submit to some trifling inconvenience for the general benefit.

Let us test this case by these principles. What are the inconveniences affecting their rights as *cestuis que trust* of this square, to which the plaintiffs are called upon to submit? It is to be borne in mind that the defendants have executed a covenant to the city not to erect any buildings upon the square, nor to suffer any trains of cars to stand or remain thereon.

First, then, in respect to light. The plaintiffs have in front of their dwellings an open street, sixty feet in width, and then this open square. Is it possible they can ever appreciate the diminution of light produced by the passage of a train of cars across the square? Clearly not. The same may be said in regard to air. No appreciable effect can be produced in this respect.

Then as to prospect. It has been said in some cases, that a right to a prospect not being a matter of necessity, but of pleasure merely, the law would not protect it. I apprehend, however, that this cannot apply to a case of this kind, where prospect as a matter of ornament was one of the objects of the dedication. I have no doubt that a court of equity ought to enjoin any erection which would materially obstruct the view afforded by keeping the square open.

But to what extent would the prospect of the plaintiffs be obstructed by the occasional passing of a train of cars along the track of this road? No one will say that the annoyance arising from this is worthy of a moment's consideration. It may be doubted whether it would not be an agreeable variation of the scene rather than otherwise.

The greatest of this class of annoyances beyond question will be, the having frequently to cross the railroad track in going to and from the square and other places. This is no doubt an inconvenience, but one which is almost inseparable from a residence in a city at the present day.

It is impossible to hold that railroads shall not be constructed; and wherever they may be located, people must cross them. It is a trifling inconvenience to which they must submit for the public benefit. The track of this road occupies but a small portion of the square, and does not, therefore, materially abridge the privilege of using it as a promenade. But if it did, it is difficult to see how in this particular the road produces any special injury to the plaintiffs beyond that done to other citizens who have an equal right to the use of the square; and if not then the corporation, and not the plaintiffs must bring the suit.

But it may be said that the annoyances which we have here noticed should be combined with the others specified in the complaint, to wit: noise, smoke, the frightening of horses, &c., in order to determine whether the road is a nuisance.

The defendants had a right under section 28, sub. 5, of the general railroad act, to have constructed their track along Kent-street, directly in front and within a few feet of the plaintiffs' dwellings, and the plaintiffs would have been without remedy, according to the decision in the case of Drake agt. The Hudson River R. R. Co., *supra.* Ought they, then, to complain that it has been removed some forty or fifty feet further from their doors?

The track was no doubt located along the side of the square, with a view to producing as little annoyance to the neighborhood as practicable; and unless we are to come to the conclusion that railroads in cities are nuisances, *per se,* I do not see how this road can be considered as such.

In granting the restraining order in this case, I acted under the impression that the plaintiffs might be regarded as the proprietors of an easement which gave them an interest in the land constituting the square; and, consequently, that the defendants were about to take the private property of the plaintiffs for a public purpose without compensation; but having become satisfied that this supposition was erroneous, I think for the reasons here given, that the order cannot be sustained. It is, therefore, reversed and vacated.