BUFFALO, LOCKPORT AND ROCHESTER RAILWAY COM-
PANY, Respondent, *v.* JOHN B. HOYER et al., Appel-
lants.

Railroads — public parks — street surface railroad is not author-
ized by the Railroad Law (Cons. Laws, ch. 49, §§ 170, 191) to
take for railroad purposes lands held by a municipal corporation
in trust for a public park or common — validity of dedication
and acceptance of such public park — when driveway across
such park not a public street.

1. The Railroad Law does not give authority to a street surface
railroad corporation to take lands which are held by a municipal
corporation in trust, for the use of the public as a public park or
common. (Railroad Law [Cons. Laws, ch. 49], §§ 170, 191.)

2. Where lands are plotted including as a part thereof a public
park or common it is not material that no municipality which can
accept the dedication exists at the time the dedication is made. It
is enough that the lots are offered, sold and bought with the under-
standing that the designated portions are public parks and com-
mons. The municipality upon its subsequent organization becomes
the trustee for the public to the extent of the dedication.

3. A grantor in making a map and conveyances, by the terms
thereof, gave to the grantees of lands abutting on what is therein
described as a "Public Common" private easements for the benefit
of the lots of land so conveyed and abutting thereon, and the right
to the owners of such lots to insist that the same be retained as a
public common, retaining the fee of the latter for the purposes for
which it had been dedicated, the effect of which was to create an
easement in favor of the public co-extensive with the purposes to
which public commons in such localities are usually applied. It
was not necessary that the fee of the land should pass in order to
secure the easement to the public.

4. On examination of the facts found by the referee as to the
dedication of land by its grantor as a "Public Common," the sub-
sequent action of the trustees of the village with reference thereto,
their acceptance of it as a public park and the use to which it has
been devoted for a long period, *held,* that the plot of land so dedi-
cated and accepted by the village constitutes a public park, and
where a driveway across the park used as such by consent without
any intention of acquiring an exclusive right therein for street pur-
poses was never dedicated as a highway, neither the plot of land

called the public park nor such driveway is a street, avenue, road or highway within the meaning of the Railroad Law, and title cannot be acquired to either for street railroad purposes.

*Buffalo, Lockport & Rochester Ry. Co.* v. *Hoyer*, 147 App. Div. 205, reversed.

(Argued January 18, 1915; decided February 25, 1915.)

APPEAL, by permission, from so much of an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered November 15, 1911, as affirmed a judgment of condemnation rendered by the Erie Special Term, and from so much of said judgment as awards costs to the plaintiff against the defendants other than the First Methodist Episcopal Church Society of Middleport, N. Y.

This is a proceeding brought for the condemnation of certain rights of way in the village of Middleport, Niagara county, N. Y. Answers were interposed by the defendants to the petition of the Buffalo, Lockport and Rochester Railway Company and the issues formed by said petition and answers were referred to a referee to hear and determine the same pursuant to section 3367 of the Code of Civil Procedure.

The referee found that the railroad corporation was entitled to judgment of condemnation of the easements in real property described in the petition and that the defendants other than the defendant the First Methodist Episcopal Church Society of Middleport, N. Y., were not entitled to compensation therefor. The court entered judgment of condemnation and appointed commissioners of appraisal of the damages to said church society. On the coming in of said report the court at Special Term ratified and confirmed the report of the appraisers and awarded the First Methodist Episcopal Church Society of Middleport, N. Y., the sum of six cents damages. From such order and the judgment of condemnation an appeal was taken to the Appellate Division, where the court

reversed the Special Term so far as the amount of damages awarded to the First Methodist Episcopal Church Society of Middleport, N. Y., is concerned and directed that new commissioners of appraisal be appointed to appraise said damages, but affirmed the judgment of condemnation and the award of costs therein.

The Appellate Division granted leave to the defendants to appeal to this court and certified that in its opinion the following questions of law are involved which ought to be reviewed by the Court of Appeals, viz.:

1. Is the *locus in quo* a public park within the meaning of section 109 of chapter 565 of the Laws of 1890, as amended?

2. Did the plaintiff have the right to condemn and to construct its road through the property involved in this proceeding along the route adopted by it?

3. Did the referee err in denying compensation to the defendants other than the defendant Methodist Episcopal Church Society?

Further facts appear in the opinion.

*Daniel J. Kenefick, Edward H. Letchworth* and *George F. Thompson* for appellants. The plaintiff has no power to condemn the *locus in quo* or to construct its road through it, for it is neither a street, avenue, road or highway, nor private property. (*Matter of B. & A. R. R. Co.*, 53 N. Y. 574; *Matter of Rochester Water Com.*, 66 N. Y. 513; *Matter of P. P. R. R. Co.*, 67 N. Y. 377; *Matter of City of Buffalo*, 68 N. Y. 167; *Matter of New York Central R. R. Co.*, 77 N. Y. 256; *Matter of Petition of N. Y. & W. R. R. Co.*, 99 N. Y. 23; *Old Colony R. Co.* v. *Framingham Water Co.*, 13 L. R. A. 333; *Barre R. Co.* v. *Montpelier R. R. Co.*, 4 L. R. A. 787; *Grof* v. *Bird Turnpike Co.*, 5 L. R. A. 662; *Trustees Vil. of Watertown* v. *Cowen*, 4 Paige, 510; *Cincinnati* v. *White*, 6 Pet. 431; *Mayor of New Orleans* v. *United States*, 10 Pet. 662; *Mayor* v. *Stuyvesant*, 17 N. Y. 34.)

The plaintiff has no power to condemn a right of way through the *locus in quo* or to construct its road therein because the same constitutes a park within the meaning of section 109 of chapter 565 of the Laws of 1890 as amended. (Railroad Law, § 191; *Trustees Vil. of Watertown* v. *Cowen,* 4 Paige, 510; *White* v. *Moore,* 161 App. Div. 400.)

*Alfred W. Gray* for respondent. The *locus in quo* is not a public park within the meaning of section 109 of chapter 565 of the Laws of 1890, as amended, and the plaintiff had the right to condemn and to construct its road through the property involved along the route adopted by it. (Lewis on Em. Domain [2d ed.], § 115h; *Anderson* v. *R. L. & N. Ry. Co.,* 9 How. Pr. 553; *Goode* v. *City of St. Louis,* 113 Mo. 257; *C., R. I. & P. Ry. Co.* v. *Joliet,* 79 Ill. 25; *Perrin* v. *N. Y. C. R. R. Co.,* 36 N. Y. 120; *B. P. Comm.* v. *Armstrong,* 45 N. Y. 234; *Kleopfert* v. *City of Minneapolis,* 90 Minn. 158; *Matter of United Traction Co.,* 119 App. Div. 806.)

CHASE, J. The Buffalo, Lockport and Rochester Railway Company is a domestic street surface railroad corporation. Its route extends from Buffalo to Rochester, and passes through the village of Middleport. That part thereof in the village of Middleport now in controversy is described in the articles of incorporation of a predecessor company as running westerly "along Park Avenue to the highway known as the 'Common;' thence westerly through the Common and along and across Main street to Church street; thence westerly along Church street to the westerly end thereof."

Consent has been obtained from the village trustees of said village for said corporation to lay its tracks upon the streets and along the route in said village mentioned in said articles of incorporation. The railroad corporation could not obtain the consent of the owner of the fee of

the property referred to as the Common, nor of all the persons and corporations owning lands abutting thereon and specially interested therein, and this proceeding was commenced by it as provided by the Code of Civil Procedure. Answers were interposed by the defendants in said proceedings, in which answers the right of the plaintiff corporation to take by condemnation an easement over the property so referred to as the Common is denied.

The right of a street surface railroad corporation to acquire title by condemnation for its railroad purposes is statutory, and the power and privilege to construct, extend, operate and maintain its road is limited by the description in the statute of the place as "Upon and along the streets, avenues, roads, highways and private property named and described in its certificate of incorporation." (Railroad Law [Cons. Laws, ch. 49], section 170.)

It is expressly provided by section 191 of the Railroad Law that "No street surface railroad shall be constructed or extended upon ground occupied by buildings belonging to any town, city, county, or to the state, or to the United States, or in public parks, except in tunnels to be approved by the local authorities having control of such parks." The Railroad Law does not give authority to a street surface railroad corporation to take lands held by a municipal corporation in trust for the 'use of the public as a public park or common. (*Matter of Boston & A. R. R. Co.,* 53 N. Y. 574.)

The question for determination, therefore, is whether the property referred to as "The highway known as the Common" is a street, avenue, road or highway within the meaning of the Railroad Law, or a public park.

The village of Middleport was not incorporated until December 25, 1858, but it existed, although unincorporated, for many years prior thereto. In or prior to 1827 John Copeland purchased between eleven and twelve acres of land that included the lands now in controversy.

His title at that time is not disputed.  The street now
known as Main street was then a highway known as the
highway leading from Judson's tavern on the ridge in
Hartland to Asher Freeman's in Royalton.  In 1827
Copeland prepared a map of his lands, and thereon
divided the same into lots.  He included therein the road
running from Judson's tavern and it is marked thereon
as Main street, and he laid out on said map a new street
to be known as Vernon street running parallel with said
Main street and 280 feet northerly therefrom.  At a point
specifically designated on said map he plotted a piece of
land eight rods wide running from Main street to Vernon
street and being 280 feet from street to street, and marked
it thereon "Public Common," and some of the lots into
which the land was divided faced and abutted said public
common on the north and south thereof.  Vernon street
became a public street, and he then, and in 1827, deeded to
John Lindsay fifteen of said village lots, some of which
abutted on said public common, and in the deed, after
designating the lots, it is provided: "The seven first
named lying and fronting on the present highway run-
ning from Judson's on the Ridge in Hartland to Asher
Freeman's in Royalton, the remainder being on a new
street denominated on said map as Vernon, ground for
which street and also ground for a public common eight
rods wide extending from Vernon street to the above
described highway as exhibited on said map, the said
Copeland hereby agrees shall be faithfully devoted."

On the same day he conveyed to the trustees of the
Methodist Episcopal Church Society a lot abutting on said
public common, "With the privilege of a public common
eight rods deep on the north side of the same which com-
mon shall extend from Main street running north and
south through the said village of Middleport, to a new
one called Vernon street."

Within less than two years thereafter he conveyed all
the remaining lots abutting the said public common and

in the conveyances referred to said map and to said common. On March 26, 1849, the village of Middleport not having been incorporated, Copeland gave to the trustees of the First Society of the Methodist Episcopal Church in the village of Middleport a deed of "All right, title and interest whatsoever either in law or equity that the said party of the first part (Copeland) or his heirs or assigns to the public common lying upon the north and in front of the church edifice belonging to said society in the said village of Middleport, Niagara County, New York. Said public common lying upon the south side of the Erie Canal and extending from Main street or road running north and south through said village eastward to another north and south or parallel street, but nothing herein contained shall be so construed as to deprive any person or persons of their equitable rights secured by former conveyances of land made by the said John Copeland."

On March, 1, 1889, the trustees of said village passed a resolution, the material parts of which, so far as they affect the question now before us, are as follows:

"It appearing that certain streets and public places of the village had never been formally adopted and accepted as such * * * Now, Therefore, be it resolved that all streets, alleys, lanes and public parks within the boundaries of the said village of Middleport * * * including * * * the public common in front of the M. E. Church are all, each and every one of them * * * hereby accepted, received, dedicated and adopted and hereby and hereafter known * * * the public common as a public park and subject to the sole power, control and authority of the board of trustees of said village of Middleport."

The acts of Copeland in making said map and conveyances gave to the grantees of the lands abutting on said public common, private easements for the benefit of the lots of land so conveyed and abutting thereon, and the right to the owners of such lots to insist that the

same be retained as a public common as provided by said map and said conveyances. (*Foster* v. *City of Buffalo*, 64 How. Pr. 127.)   Copeland retained the fee of the public common in trust, however, for the purposes for which the same had by him been dedicated and subject to the equitable rights as stated in the conveyance of 1849, when he so conveyed the fee of said common to the trustees of the First Society of the Methodist Episcopal Church.

The effect of his dedication of the land designated as a public common was also to create an easement in favor of the public coextensive with the purposes to which public commons in such localities are usually applied.   It was not necessary that the fee of the land should pass in order to secure the easement to the public. (*Porter* v. *International Bridge Co.*, 200 N. Y. 234; *Anderson* v. *Rochester, L. & N. F. R. R. Co.*, 9 How. Pr. 553.)

Where lands are plotted including as a part thereof a public park or common it is not material that no municipality which can accept the dedication exists at the time the dedication is made.   It is enough that the lots are offered, sold and bought with the understanding that the designated portions are public parks and commons.   The municipality upon its subsequent organization becomes the trustee for the public to the extent of the dedication. (*Village of Riverside* v. *MacLain*, 210 Ill. 308; *White* v. *Moore*, 161 App. Div. 400; *City of Cincinnati* v. *Lessees of White*, 6 Peters, 431.)

Soon after 1827 people began to pass over the common from Vernon street to Main street and from Main street to Vernon street and that part thereof about midway of the north and south sides was occasionally used for teams and vehicles, and such use increased until it became a way in common use.   The referee found, among other things, as follows: " The common has been used at times for many years for public purposes, including lawn parties, public meetings, recreation and amusement; and I find that the village trustees have assumed jurisdiction

over it and have regulated and caused to be constructed and repaired sidewalks across the same on the northern and southern boundary lines from Main to Vernon streets, which streets are public streets of said village of Middleport; I find that said common has been used as a means of passage by people going from place to place in said village and crossing from Main to Vernon street and from Vernon to Main street; that it has been used as a means of access to several buildings which are located upon the north and south bounds of the common both on foot and with vehicles; and I find that through the center of said common a public highway thirty feet wide exists and has existed for many years, and that it is macadamized and improved, and is used by the public at will. The common has not been improved or beautified, but has upon it trees and grass which make it a place for recreation, and it has the qualities of a public park except improvement, beautifying and being subjected to park regulations. The common has never been specifically granted to the village of Middleport, but has been formally accepted as a public park by the village trustees, but not improved as a public park by them and it has been treated in various proceedings of the village board as though it were public property over which the trustees had control from year to year and in the records of some of said proceedings is designated ' Public Park.' "

The statements in the finding quoted so far as they are favorable to the contention of the railroad company are substantially negatived by other findings of the referee.

The referee when requested by the defendants to find " That thereafter (1827) the said John Copeland caused a map to be made dividing said premises so received by said conveyance into lots, excepting the premises specifically described in ' One ' hereof which he set apart on said map into one space and called the same ' Public Common ' and thereby dedicated the same for the purposes of a public common; that said premises have ever

since been used as a public common and public park, and
for the purposes of amusement, enjoyment, recreation,
shade, light, air, beauty and adornment," found as so
requested except as to the words "and public park" and
the words "and adornment."

And when requested to find "That said premises herein
specifically described have since its dedication by John
Copeland been used for the purpose of ornament, for the
purpose of shade, recreation, adornment, enjoyment, for
public assemblages and never for any commercial pur-
pose  *  *  *," found as so requested except that he
refused to find that the common had been beautified
or ornamented.

The referee also found "That said driveway through
the center of said plot so called a common was not laid
out by the original proprietor at the time said premises
were dedicated as a common."

Also, "That said driveway is not officially spoken of
or referred to in the public records of the village of Mid-
dleport and was never formally accepted as such."

Also, "That the premises were never in terms dedi-
cated as a highway."

Also, "That said public common or any part of it
was never formally accepted by the village of Middleport
or any public authority as a highway, driveway, road,
street or avenue."

Also, "That the public records of the village of Mid-
dleport refer to said premises as the 'Village Green' and
later as a public common, down to the year 1889."

Also, "That since 1889 the village records of Middle-
port, N. Y., including the minutes of proceedings,
assessment rolls, and other resolutions have referred to
said premises as the Park."

Also, "That all of said public common except said
driveway about 30 feet wide in the center, was fenced
pursuant to the direction of the board of trustees of the
village of Middleport by the erection of a barrier around

the same and that said barrier remained there about six years and up to about ten years ago."

Also, after finding that maple trees were growing in the public common which were from twenty to fifty years old, the referee found, "That nothing else has been permitted to grow upon said public common except shade trees and grass and that the village board of the village of Middleport or the officers of said village have caused said trees to be trimmed and said grass to be kept removed."

He also found that said trees and grass are an adornment and improvement to said public common and add a beauty to it.

Also, "That the board of trustees of the village of Middleport have made regulations in reference to said premises by preventing ball playing therein and preventing snow-balling therein and by preventing the driving thereon from east to west except in said driveway."

Notwithstanding the findings mentioned and other findings of similar import, the referee found that said plot of land is not a public park. He also found in substance and effect that the entire plot of land known as the common constitutes a highway within the meaning of the Railroad Law entitling said railroad corporation to take an easement therein for its right of way. It seems clear to us that the plot of land so dedicated by Copeland and accepted by the village does constitute a public park. Nothing has occurred since its dedication to affect its character as such unless it be as to the strip thirty feet wide through the center thereof which has been used as a driveway.

It is suggested that the private easements in said plot of land which are attached to and are owned with the lots abutting on said common are antagonistic to and inconsistent with the claim that the common is in fact a public park. We do not agree with such claim. Lands may be dedicated to the public for a park subject to

private easements of access, light and air.   Such private rights or easements given prior to or contemporaneous with the dedication of land as a public park are not so antagonistic to the rights of the public in such lands as to prevent its use for park purposes.

Whether private easements can be acquired in any form in a public park after its dedication as such is not considered.   The question whether the strip of land used by the public as a driveway has lost its identity as a part of the public park is one of more difficulty, but that it has not so lost its identity is reasonably clear.

Driveways in public parks are common.   Driveways like walks and bridle paths are not only not inconsistent with the use of a public park as such, but they are a part of the common and ordinary means by which a park is used by the public.   In the case of large parks, paths and driveways are essential to their satisfactory use.   The ordinary use by the public of paths and driveways through a public park is consistent with and incidental to the purposes of the park.   The use of land by a railroad corporation is a public use but one inconsistent with its use as a public park.   (*Porter* v. *International Bridge Co., supra.*)

Ordinary paths and driveways in a public park are subject to the regulations of the officers charged with the duty of superintending and caring for the park.   The course of such paths and driveways may be changed from time to time, or such paths and driveways may be wholly closed as in the judgment of the officials in charge of the park may seem desirable.   This is true, although in small parks like the one now under consideration the use of paths and driveways may not be essential for park purposes or such use may have become to some extent, or even principally, commercial and for general purposes.

It is suggested that lands held for public park purposes may be re-dedicated for other public purposes or generally abandoned for public use, but it is not necessary to deter-

mine such questions on this appeal. A driveway through a park is not only consistent with its use as a park, but unless there is at some time an intention to re-dedicate the land exclusively for street purposes its use by consent does not give the municipal corporation or the owner of the fee a new and different title from the one reserved or obtained through the original dedication. Moreover, the owner of the fee and a part at least of the owners of the abutting land insist that the whole of the park is now held as a public park and that even if possible without their consent no part thereof has been abandoned for park purposes or re-dedicated to another use by the village.

It is expressly found that the driveway across the park has never been dedicated as a highway and the resolution of the board of trustees of the village in 1889 accepted the entire plot and dedicated the same as a public park without any limitation or exception whatever. Although the driveway has been long used as such it has been so used by consent without any intention of acquiring an exclusive right therein for street purposes as distinguished from park purposes. Neither the plot of land called the public park nor the driveway across the same is a street, avenue, road or highway within the meaning of the Railroad Law.

The judgment and order appealed from should be reversed and the proceeding dismissed, with costs in all courts. The first question certified is answered in the affirmative, the second in the negative, and the third not answered.

WILLARD BARTLETT, Ch. J., CUDDEBACK, MILLER, CARDOZO and SEABURY, JJ., concur; HISCOCK, J., not sitting.

Judgment and order reversed, etc.