**CARTER v. SWAN et.**

Common Pleas Court, Summit County.

No. 182009.   Decided June 8, 1953.

Chester Dinsmore, Akron, for the plaintiff.

James Olds, Akron, for Federated Church of Richfield.

William Spencer, Asst. Dist. Atty., Akron, for Trustees of Richfield Township.

Alan Sophrin, Cuyahoga Falls, for defendant Joseph Mortimer.

**OPINION**

By EMMONS, J.

This is an action for declaratory judgment as to the ownership of a one acre plot of ground situated in Richfield, Ohio, and also for a determination of the rights of the parties herein.

In 1841 Orson M. and Lucretia S. W. Oviatt and John and Laura N. Newton signed an instrument, a part of which is as follows:

"Know all men by these presents, that we, John Newton and Laura Newton, his wife, and Orson M. Oviatt and Lucretia S. W. Oviatt, his wife, all of Richfield in Summit County, Ohio, for divers causes moving, especially for the sum of $1.00 and the public good, in consideration received to our full satisfaction, we have given, granted, remised, released and forever quit claimed, and do by these presents absolutely give, grant, remise, release and forever quit claim all such right and title as we, the said John Newton and Orson M. Oviatt, have a right to have in or to the following described land * * *, to the place of beginning containing one acre of ground or land, the design and grant of this land is for public use for the benefit and public use of the Congregational Society and of those lands and those living on the west side of said ground and it is to remain as a public green * * *."

It was admitted by counsel that any right that the Congregational Society would have by reason of this grant would inure to the benefit of the Federated Church of Richfield since they are, for the purpose of this suit, the same entity.

Since the date of this instrument various persons of the Village of Richfield maintained this plot of ground cutting weeds and grass and building a driveway over this plot for the benefit of ingress and egress for those living on the west side of this plot, and also for the use of the members of the Congregational Society. There was grading done, trees planted and a flagpole erected, some of this improvement and maintenance being performed by members of the Church while again non-members assisted in this task.

The court will endeavor in this opinion to answer the respective claims of the parties herein.

Counsel for the Township Trustees claims that the plaintiff has no right to bring this action, for it is essential that the party seeking relief must show that he has a legal interest in the controversy.

**Brown v. Manning, 6 Ohio 298, syllabus 4:**

"Individual owner of adjacent lots may proceed in equity to enjoin proprietors from making private appropriations of a square dedicated for public purpose."

Since the Township Trustees have disclaimed any interest in this property the burden had to fall on some one to determine the status of this plot of ground. In this instance the plaintiff is part owner of land contiguous to property that is about to be appropriated by others, and his right to peace and quiet enjoyment of his land, as well as the value thereof, may be affected. Certainly, he is not a volunteer assuming to protect the rights of others, but he is entitled in his own right to a declaratory judgment of his rights common to those of the Township, as incidental and necessary to the determination of his individual rights, he also being in a position as a probable reversioner of the fee to the land in question.

This court is not concerned with the fact that the Township Trustees have disclaimed any interest in this property, for in the dictum in **Scott v. Snyder, 73 Oh Ap 424, 430, 54 N. E. 2d 157, 160,** the court said:

"We have noted that no public authority, either the township trustees or the county commissioners, who would normally supervise these playgrounds, has manifested any purpose to exercise control over [it] or to insist upon any right of the public to use [it]. * * * 'An offer of dedication, to bind the dedicator, need not be accepted by the city or county or other public authorities, but may be accepted by the general public. To deny this would be to deny the whole doctrine of dedication.' "

The principal defense of the Township Trustees, as well as the Federated Church of Richfield, is that the title to this property in question was held to be in the name of the Church in a former case, being No. 152,511 of the Summit County records, which defense is one of res adjudicata, however, in a previous hearing in the instant case this court disposed of that question in the following opinion:

"The primary question at this stage of the case is whether the judgment rendered in case No. 152511 is such as would make the issues in this case res adjudicata, and if so, then the instant case should be properly terminated without further evidence or trial being had, however, if the doctrine of res adjudicata does not apply then the issues will be further tried by this court.

"If the judgment rendered in the former case is not a nullity and void, then the present action amounts to a collateral attack upon the previous judgment, which attack can-

not in law, be sustained, however, if the judgment were entered by the court without having jurisdiction over the persons of the defendants and/or others, or the judgment was one that the court had no right or authority to make, then the instant action would not be such as would be a collateral attack upon the former judgment.

"There is no argument concerning the statement made by Assistant Prosecuting Attorney Spencer to the effect that a judgment of a court of record of general jurisdiction, regular on its face, creates a presumption of validity, however, even so, this presumption is a rebuttable one.

"Was the judgment, then, regular on its face, and if so, was this presumption of validity rebutted?

"From a perusal of the files in case No. 152,511 it is clear that this action was intended to have been brought under §10051 GC, in which a transfer of title was asked and service by publication had for four consecutive weeks only, which under §10052 GC was permitted without affidavit.

"There is no allegation in the body or prayer of the petition wherein it seeks to bar the interest of the defendants, or others, in this property. However, in the amended journal entry there is an order barring the defendants of any right or interest they may have therein, and clearly the court was without right or authority to make such an order, for such stems from an action to quiet title, whereas the petition seeks only permission to transfer property.

"If this were an action to quiet title or one excluding the defendants from claiming any interest in this property, then service by publication for four consecutive weeks only, without affidavit, is not such service as meets the requirement of the law in such action, and the court, therefore, would not have jurisdiction over the persons of the defendants, and the presumption of validity is rebutted and the judgment is a nullity and void.

"The allegations of the petition, the prayer of the petition and the defective service of summons were such that the defendants were in no position to defend this action, nor were the other members of the public in such a position, therefore a judgment divesting the interest of these defendants and others would amount to the taking of property without due process of law.

"It is therefore my finding that the court had no jurisdiction over the defendants, nor had the court the right or authority to make an order contrary to that asked for in the petition, and the judgment being void in so far as these defendants and others are concerned, the doctrine of res

adjudicata is not applicable and the instant case is not a collateral attack upon a former judgment."

There is nothing of record prior to the date of the execution of this conveyance by the Oviatts and Newtons, showing that the title was in their names, and counsel for the Federated Church maintains that since ownership of this plot was denied that the burden was on the plaintiff to prove it, which he claims was not done.

Stevens on Evidence, Article 100:

"When it has been shown that any person, for a long period of time, exercises any proprietary right which might have had a lawful origin by grant or license from the crown or from a private person and the exercise of which might and naturally would have been prevented by persons interested, if it had not had a lawful origin, there is a presumption that such right had a lawful origin and that it was created by a proper instrument * * *"

20 N. J. L. 61, Fuller v. Saxton:

"Recitals in ancient documents of former documents have been held to be presumptive evidence of the existence of the earlier writings."

Jones on Evidence, chapter 3 page 35, paragraph 76:

"The possession of real property during a prolonged period affords ground for a presumption that the possessor has held under a grant."

From a study made of the law concerning the first defense of the Trustees of the Federated Church the court is of the opinion that where a conveyance or dedication was made by persons in which grant they purported to be the owners of the fee and there is nothing of record or proof to show that such was or was not the fact, and such grant has been one of long standing without any one contesting their right to grant or convey such property for these many years, there is created a presumption then because of public policy that the original grantors were seized of the title to land and had a right to dispose of said property.

Here was a grant made in 1841 and no one ever claimed that the Newtons and Oviatts were not the owners of said land at that time nor afterwards, until this suit was commenced, so the fact that there were no pre-existing records of transfers found by which it was shown that the Oviatts and Newtons owned the fee, does not defeat their right to convey as there is a presumption that such right existed. This rule must of necessity exist because of the manner that public records were kept in the early days of our history, and for the perpetuation of orderly processes in passing title.

The sole question remaining for the court's disposition is: Was this conveyance by the Oviatts and Newtons a dedication, and if so, to whom and for what purpose?

It is recognized that a deed to operate as a grant must name a grantee, but if the instrument, of the form and language of a deed, lacks a grantee it will operate as a dedication of the land therein described, if it is probable that the intention of the grantor shows it to be for the use of the public, religious or charitable organizations, and so forth. It is admitted that no grantee was named but that the instrument in question had the form and language of a deed, so the intention of the dedicators must then be established.

16 Am. Jur., page 361, paragraph 17:

"The intention of the owner to set apart land or property for the use of the public is the foundation and life of every dedication. * * * A dedication may be express as when the intention to dedicate is expressly manifested by a deed. * * * An implied dedication may be shown by some act or course of conduct on the part of the owner from which a reasonable inference of his intent may be drawn. * * *"

There is no doubt but that an express dedication of this plot was made by the owners, as evidenced by the deed, however, since there is an ambiguity existing as to the benefactor of the dedication the court must look to the intention of the dedicators as may be proved directly or inferentially, and in so doing the court has the right to determine how other persons considered the dedication.

In plaintiff's Exhibit 11, which is a brief history of the Congregational Church, written by the members thereof, there is the following statement concerning the church:

"It had been a work demanding toil and self-denial and united effort. Some contributed timber, others the goodly whitewood for the siding, and still others the work of their hands. At that time the nails (costing ten cents per pound) and everything that came from abroad had to be shipped from Pittsburgh by ox team, requiring weeks for making one trip. Of the men who so generously contributed to this work only four remain—three of whom are ninety years of age, but the names of General O. M. Oviatt, James W. Weld, Esq., Judge John Newton, and many others will long be held in remembrance."

This history was compiled in June, 1886, some forty-five years after the deed herein was made, and yet no mention is made in this history of a dedication by the Newtons or the Oviatts of this one acre plot of ground to the Church, even though throughout this history it recited the works and deeds of the

various members of the congregation, including Newton and Oviatt.

In March, 1852, Orson M. Oviatt and Lucretia S. W. Oviatt deeded a parcel of ground to Everett Farnam, and in the description, mention is made of the "public square," which is the plot in question.

In September, 1886, Ralph Farnam deeded to the Trustees of the First Congregational Society of Richfield, which is now the Federated Church of Richfield, some land, and in the description, mention is made of the "public square."

In June, 1916, Howard B. Garman and wife deeded to the First Congregational Church of Richfield .174 acres of ground, and in the description, mention was made of the "public square."

On various public records the plot is marked as "public square."

In the conveyance which is a dedication the consideration recited is for the sum of One Dollar **and the public good.** (Emphasis by the court.)

A part of the deed is as follows:

"The design and grant of this land is for public use for the benefit and public use of the Congregational Society and of those lands and of those living on the west side of said ground, and it is to remain as a public green * * *."

It seems quite apparent to the court that by the use of the expression "is for public use for the benefit and public use of the Congregational Society," and the fact that the plot was to remain a public green and that part of the consideration was the public good, together with the other circumstances revealing the thoughts of others concerning the grantors' intentions, that there is no question that the dedication was for the use of the public to remain a public green, and that the Congregational Society and those west of the land were to be incidental and inclusive benefactors.

Even though there was sufficient evidence to prove intentions of the dedicators, yet if it were not so proved the essence of dedication is that it shall be for the use of the public at large, and while it is applicable to pious and charitable organizations, nevertheless, where a dedication is made and an ambiguity exists as to the dedicatee, and it cannot be manifested by the intention of the dedicator, then if the smaller group is inclusive of the larger one, the larger group will be considered the benefactor of the dedication. In this case the Church, as well as those living to the west of the land in question, are all inclusive in the general public, so the conclusion must prevail that the general public is the benefactor.

Counsel for the Church claims the Township or public never

accepted this dedication, and if they did, then he claims the Church has been in possession and exercised dominion over the premises to the exclusion of the public, since 1920 or 1921, and therefore there was an abandonment of a public easement by non-user for more than twenty-one years.

With these thoughts the court cannot agree. The acts of the people of Richfield Township throughout these years show definitely an acceptance of this dedication, and while the people have not been as active in the past few years in maintaining this plot, nevertheless, the people do not have to continually occupy, beautify or effect the uses of a public park or green in order to overcome abandonment by the public of a dedication of land. There is evidence that some of the public are doing a little work in the way of maintenance and that the Church has not excluded the public from this ground, nor have the members of this Church been active in maintaining this particular plot, all of which is sufficient in the court's opinion to negative an abandonment.

As stated by Attorney Dinsmore in his brief, the fact that easement rights are reserved which are appurtenant to particular other parcels of land is no objection to a dedication.

Buffalo, L. & L. R. R. Co. v. Hoyer, 214 N. Y. 236, 108 N. E. 455, 458:

"It is suggested that the private easements in said plot of land which are attached to and are owned with the lots abutting on said common are antagonistic to, and inconsistent with, the claim that the common is, in fact, a public park. We do not agree with such claim. Lands may be dedicated to the public for a park subject to private easements of access, light, and air. Such private rights or easements given prior to, or contemporaneous with, the dedication of land as a public park are not so antagonistic to the rights of the public in such lands as to prevent its use for park purposes."

In conclusion, the court is of the opinion that there was a dedication of this one acre plot of ground to the general public as a public green, including uses appropriate to the activities of the Federated Church, which formerly was the Congregational Society, and with a right of way across it by the plaintiff and his co-tenants, the Federated Church and Joseph Mortimer, said right of way being an easement running with the land of the aforesaid parties.